UNION TRUST CO. *v.* FERRY.

1. HUSBAND AND WIFE — PROPERTY SETTLEMENT—MENTAL COMPETENCY—CANCELLATION OF INSTRUMENTS.
   Where a property settlement agreement between husband and wife was admittedly valid, a second agreement between them made about nine months later, after they were divorced, will not be set aside on the ground of the wife's incompetency, in the absence of any evidence of such incompetency.[1]

2. SAME—FRAUD.
   An agreement between a husband and his divorced wife by which he absolutely promised her an income of from $110 to $150 a month, "as needed," which supplanted a former agreement by which he guaranteed to her an income of at least $110 a month and was obligated to pay a $6,000 mortgage, will not be set aside as fraudulent, although he was released from his obligation to pay the mortgage in case she died before it was paid.[2]

Appeal from Wayne; Brennan (Vincent M.), J. Submitted April 20, 1926. (Docket No. 157.) Decided June 7, 1926.

Bill by the Union Trust Company, guardian of Cornelia Ferry, a mentally incompetent, against Henry M. Ferry to set aside a property settlement on the grounds of fraud and undue influence. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Frederic T. Harward,* for plaintiff.

*Dykema & Wheat,* for defendant.

CLARK, J. Cornelia Ferry and defendant, Henry M. Ferry, married in 1895 and separated in 1920. A suit

[1]Husband and Wife, 30 C. J. § 855 (Anno); [2]Id., 30 C. J. § 838.

for divorce was pending, when, in February, 1920, a property settlement was made and signed by and between them. Pursuant thereto Mrs. Ferry received deed of a two-family flat at 390 Taylor avenue, Detroit, valued at about $18,000, subject to a mortgage of $6,000, which mortgage the husband assumed and agreed to pay at maturity, and he promised to pay the interest thereon, and the taxes, and the cost of necessary repairs of the premises and he guaranteed a return of rents from the flat of at least $110 per month, and to secure performance on his part he pledged certain collateral.

They were divorced in March, 1920, and thereafter were friends. He was attentive to her wants and solicitous of her welfare. Their testimony indicates refinement, education, intelligence. Both are of mature age. She has daughters of a former marriage who have contributed to the difficulty. He has properties valued at $75,000.

In July, 1920, she wrote a letter to Mr. Ferry complaining of her daughters, referring to the said agreement, and saying also:

"I have been thinking about the mortgage on my property at 390 Taylor avenue which you have agreed to pay. In view of the treatment I have received at the hands of my daughters and the fact that you are the only one who has stood bye me even though not legally bound to do so now, there is no reason why you should clear the property for the girls who have plainly shown they do not care anything for me. If then you will agree that I shall always have my own home and that you will prevent foreclosure of the mortgage I am willing to put the matter in such shape that you will be free from paying this mortgage. I am willing to fix it as seems best."

In August, 1920, they made a new agreement by which he promised her—

"during her natural life an income of not less than one hundred and ten dollars and up to one hundred and fifty

dollars per month (including the rental value of the apartment at 390 Taylor avenue which she now occupies), as needed by said Cornelia Ferry and payable in monthly installments;

"2nd. That he will pay and cancel the mortgage of six thousand ($6,000) dollars now existing on lot 39 of the Adams & Peck subdivision in the city of Detroit and the interest thereon, or pay and cancel any future mortgage that may be placed on said land for the purpose of paying the mortgage indebtedness now existing, together with interest thereon, providing it becomes necessary to pay said indebtedness and discharge the land of said lien or liens during the lifetime of said Cornelia Ferry, it being the intention of the parties that said Henry M. Ferry is to protect said land from a foreclosure of the lien created by said mortgage, or any future mortgage, during the lifetime of Cornelia Ferry, and that he be relieved from his obligation hereby created should Cornelia Ferry die during the existence of the above described mortgage or any subsequent mortgage on said land."

He agreed to pay the taxes during her life on the Taylor property. He also agreed to put up certain collateral as security valued at about $3,000. The agreement provided that upon her death he would be freed from obligation thereunder.

In 1922 plaintiff was appointed guardian of Mrs. Ferry. In 1923 this bill was filed to set aside the agreement of August, 1920, on the grounds of mental incompetency of Mrs. Ferry and fraud and undue influence of defendant. The decree dismissed the bill, but it provided that Mr. Ferry pay the costs of repairs of the flats, liability for which he readily admitted although that feature had been omitted from the second agreement, and it required Mr. Ferry to put up approved collateral in the sum of $6,000 to secure performance of the agreement; he, while on the witness stand and questioned by the court, having expressed his willingness to do that. Plaintiff has appealed.

The evidence runs over the period of their ac-

quaintance, nearly 30 years, about 25 of which they lived together as husband and wife, and nothing will be gained by reviewing it.    The agreement of February, 1920, is valid, admittedly.    She was then fully competent mentally.    She was just as much so in August, 1920.    There is no evidence to the contrary. The record presents no issue of undue influence.    By the second agreement, as compared with the first, Mrs. Ferry was advantaged by being promised absolutely an income of from $110 to $150 per month "as needed," payable monthly.    He might gain by the contingency that she died before the mortgage was paid.    We are not persuaded of the claim of fraud.    The decree is equitable.

It is affirmed, with costs to defendant.

BIRD, C. J., and SHARPE, SNOW, STEERE, FELLOWS, WIEST, and MCDONALD, JJ., concurred.